IN the MATTER OF PATERNITY OF C.M.C.:
STATE of Wisconsin, Petitioner-Respondent,

v.

R.L.B., Appellant.

Court of Appeals

*No. 89-1089. Submitted on briefs February 19, 1990.—Decided
March 13, 1990.*

(Also reported in 455 N.W.2d 248.)

On behalf of the appellant, the cause was submitted on briefs of *Michael M. Rajek* of *Losby, Farr & Rajek* of Eau Claire.

On behalf of petitioner-respondent, the cause was submitted on the brief of *Karl J. Gothel,* district attorney, of Pepin County.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J. R.L.B. appeals a paternity judgment entered pursuant to a directed verdict in favor of the state after a jury found that he was not the father of C.M.C. R.L.B. argues that the circuit court erred by directing the verdict and frames the issue on appeal as whether the state is entitled to the presumption of paternity under sec. 767.48(1m), Stats., if evidence is received at trial that another potential father exists. We conclude that the state met its burden of proving the basic facts needed to raise the presumption; however, the circuit court erred by directing the verdict because sufficient evidence existed that could reasonably rebut the presumption. Thus, paternity was for the jury to decide.

V.M.C. gave birth on October 27, 1986. She named R.L.B. and four others as men with whom she had sexual intercourse during the statutory conceptive period. Pursuant to sec. 891.395, Stats., the presumed conception period was calculated to be between December 20, 1985,

and February 18, 1986. Blood tests eliminated three of the men as a potential father.[1] Another, named Keith (last name unknown), was not located or tested. R.L.B.'s blood test resulted in a 99.36% probability that he is the father.

At trial, R.L.B.'s blood test results were admitted into evidence. The mother testified that she had sexual intercourse with R.L.B. on February 1. She testified that before C.M.C. was born, she had her last menstrual cycle on January 10, and that her next cycle would have begun around February 9 or 10. The mother also testified that she had sexual intercourse with a man named Keith on February 13. On cross-examination, the mother testified that during sexual intercourse with R.L.B., she had used birth control but that she had not used any with Keith.

R.L.B. declined to introduce any testimony at the trial, and the state moved for a directed verdict. The court withheld its ruling on the motion and submitted the case to the jury. The jury returned a verdict finding that R.L.B. was not the father. The trial court then granted the state's motion for a directed verdict.

■

In determining whether a directed verdict should be granted, the test is whether there is any credible evidence that under a reasonable view would support a verdict contrary to that which is sought. *Village of Menomonee Falls v. Michelson,* 104 Wis. 2d 137, 154, 311 N.W.2d 658, 666 (Ct. App. 1981). The evidence is viewed most favorably to the party against whom the verdict is sought to be directed. *Id.*

Section 767.48(1m), Stats., provides:

---

[1]Because blood tests eliminated these men, testimony relating to sexual intercourse between them and the child's mother was inadmissible at trial. Sec. 767.48(4), Stats.

Under [the blood testing procedures of] sub. (1), if the blood tests show that the alleged father is not excluded and that the statistical probability of the alleged father's parentage is 99.0% or higher, the alleged father shall be rebuttably presumed to be the child's parent.

Section 903.01, Stats., dealing with the evidentiary effects of a presumption, provides:

Except as provided by statute, a presumption recognized at common law or created by statute, including statutory provisions that certain basic facts are prima facie evidence of other facts, imposes on the party relying on the presumption the burden of proving the basic facts, but once the basic facts are found to exist the presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence.

██

The "basic facts" imposing the paternity presumption are that the alleged father is not excluded and that the statistical probability of the alleged father's parentage is 99.0% or higher. Consequently, once R.L.B.'s blood test results were admitted into evidence, sec. 767.48(lm) dictated that R.L.B. was rebuttably presumed to be the father. R.L.B.'s argument that the state was not entitled to the presumption based on evidence concerning an untested potential father is better characterized as an argument that the presumption, although raised, had been sufficiently rebutted.

In *State v. J.L.T.,* 149 Wis. 2d 548, 439 N.W.2d 829 (Ct. App. 1989), the presumption of paternity was raised under sec. 767.48(lm), Stats., and the trial court directed a verdict in favor of the state. On appeal, this court held that the mere inquiry at trial about other potential, but

untested, fathers does not raise a reasonable inference from which a jury could conclude the necessary facts to support a verdict for the defense.[2] *J.L.T.*, 149 Wis. 2d at 555, 439 N.W.2d at 832. This court held that it was not necessary to answer "the question that will inevitably arise: Does proof of intercourse with one or more untested males overcome the presumption and present a legitimate jury issue on paternity." *Id.* at 554, 439 N.W.2d at 832. This court went on to say that if there was "sufficient evidence of sexual intercourse with an untested person, a directed verdict may be inappropriate." *Id.* at 555–56, 439 N.W.2d at 833.

The state argues that the directed verdict was appropriate because proof of intercourse with another untested male, without further scientific or medical testimony, does not overcome the presumption. It contends that there is only a possibility that Keith is the father while there is a 99.36% probability that R.L.B. is the father and that possibilities do not overcome probabilities.

■ This case involves more than mere proof of intercourse with an untested male from which a jury could reasonably find it was more probable that the accused was not the father. The mother also admitted that when she had sexual intercourse with R.L.B., she used contraception, but that when she had intercourse with Keith, she did not.[3] If the jury believed the birth control was

---

[2] The mother denied having sexual intercourse with these males, and no other testimony supported a finding that intercourse with untested males occurred. *J.L.T.*, 149 Wis. 2d at 554, 439 N.W.2d at 832.

[3] The 60-day presumptive conception period (240 to 300 days before birth), *see* sec. 891.395, Stats., recognizes no further evidentiary preference for various acts of intercourse within that 60-

effective, it was entitled to find R.L.B. was not the father despite the statistical evidence. We conclude that the cumulative effect of the evidence may be sufficient to overcome the presumption of paternity, and it was for the jury to make this determination.

Regarding the presumption, the jury was instructed:

> [T]here is no dispute that the blood tests that were admitted in evidence state that the statistical probability of [R.L.B.] being the father of [C.M.C.] is over 99%. From this fact the law establishes a rebuttable presumption that [R.L.B.] is the father. At this point the burden of proof shifts to [R.L.B.].

> There is evidence that another possible person referred to in testimony as Keith may be the father of the child. You must resolve this conflict. Unless you are satisfied to a reasonable certainty by the greater weight of the credible evidence that it is more probable that [R.L.B.] is not the father, you must find that [R.L.B.] is the father.

Because sufficient evidence was raised at trial that could convince a jury to a reasonable certainty that it was more probable that R.L.B. is not the father, it was error to direct the verdict. We remand this case directing that judgment be entered in accordance with the jury verdict.

*By the Court.*—Judgment reversed and cause remanded with directions.

---

day period. Thus, absent competent evidence on the matter, the mother's testimony that she had intercourse with R.L.B. approximately two weeks before her next anticipated menstrual period and intercourse with Keith two weeks later does not suggest either incident was more probable than the other to have caused the pregnancy.